UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

THOMAS M. FOURNIER,                     Case No. 14-11206

            Plaintiff,                David M. Lawson
v.                                      United States District Judge

COMMISSIONER OF SOCIAL SECURITY,        Michael Hluchaniuk
                                        United States Magistrate Judge
            Defendant.
_____/

**REPORT AND RECOMMENDATION
CROSS-MOTIONS FOR SUMMARY JUDGMENT (Dkts. 11, 12)**

A.    Proceedings in this Court

On March 23, 2014, plaintiff filed the instant suit seeking judicial review of the Commissioner's decision disallowing benefits.  (Dkt. 1).  Pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Rule 72.1(b)(3), District Judge David M. Lawson referred this matter to the undersigned for the purpose of reviewing the Commissioner's decision denying plaintiff's claims.  (Dkt. 3).  This matter is before the Court on cross-motions for summary judgment.  (Dkts. 11, 12).  The cross-motions are now ready for report and recommendation.

B.    Administrative Proceedings

Plaintiff filed the instant claim for a period of disability and disability insurance benefits on May 3, 2011.  (Tr. 136-37).  The same day, plaintiff

protectively filed a Title XVI application for supplemental security income.  (Tr. 129-135).  In both applications, plaintiff alleged a disability beginning December 1, 2009.[1]  The Commissioner initially denied plaintiff's disability application on July 29, 2011.  (Tr. 143-144).  Thereafter, plaintiff requested an administrative hearing, and on July 30, 2012, he appeared with counsel before Administrative Law Judge ("ALJ") Ethel Revels, who considered his case de novo.  (Tr. 24-52).  In a October 18, 2012 decision, the ALJ determined that plaintiff was not disabled within the meaning of the Social Security Act.  (Tr. 9-23).  The ALJ's decision became the final decision of the Commissioner on January 28, 2014, when the Social Security Administration's Appeals Council denied plaintiff's request for review.  (Tr. 1-5).  Plaintiff filed this suit on March 23, 2014.  (Dkt. 1).

For the reasons set forth below, the Court concludes that the ALJ erred when she construed Dr. Shaw's opinion to denote "light" work.  The Court further concludes that the ALJ erred when she failed to account for plaintiff's moderate concentration, persistence, or pace limitations in the RFC determination or in the hypothetical question to the vocational expert.  The Court therefore **RECOMMENDS** that Plaintiff's Motion for Summary Judgment (Dkt. 11) be **GRANTED**, that Defendant's Motion for Summary Judgment (Dkt. 12) be **DENIED**, and that, pursuant to 42 U.S.C. § 405(g), the decision of the

---

[1]  Plaintiff subsequently amended his onset date to be July 19, 2010.  (Tr. 27).

Commissioner of Social Security be **REVERSED AND REMANDED** for further proceedings in accordance with this Report and Recommendation.

## II.    FACTUAL BACKGROUND

### A.    ALJ Findings

Plaintiff had past relevant work as a truck driver and tractor trailer driver. (Tr. 28).  The ALJ applied the five-step disability analysis to plaintiff's claims and found at step one that between the amended alleged onset date (December 1, 2009) and the last date insured (December 31, 2013), plaintiff did not engage in any substantial gainful activity.  (Tr. 14).  At step two, the ALJ found that plaintiff had the following severe impairments: major depressive disorder, panic disorder, adjustment disorder, polysubstance abuse in recent remission, high blood pressure, diabetes mellitus, obesity, and residual status post right arm injury (20 CFR 404.1520(c) and 416.920(c)).  (*Id.*)  At step three, the ALJ found that plaintiff did not have an impairment or combination of impairments that met or equaled one of the listings in the regulations.  (*Id*. at 15).

The ALJ determined that plaintiff had the residual functional capacity ("RFC") to perform:

> light work as defined in 20 CFR 404.1567(b) and 416.967(b) except the claimant cannot work with the general public; cannot work in a crowded area, cannot work in close proximity to co-workers; and cannot perform fine manipulation with his right, dominant hand.

3

> That work must be simple repetitive task at the SVP 1 or
> 2 level (unskilled work) because the claimant cannot
> carry out detailed instructions because of anxiety and
> depression.

(Tr. 16). At step four, the ALJ determined that plaintiff was not capable of

performing any past relevant work. (Tr. 18). At step five, the ALJ concluded that

based on plaintiff's age, education, work experience and RFC, there are jobs that

exist in significant numbers in the national economy that plaintiff can perform

and, therefore, he has not been under a disability at any time from the alleged

onset date through the date of the decision. (Tr. 18-19).

     B.    <u>Plaintiff's Claims of Error</u>

     1.    The RFC is not supported by substantial evidence

Plaintiff contends that the RFC is not supported by substantial evidence

because first, it appears that the ALJ's conclusion is based on a report issued by a

single decision maker (SDM). (Tr. 59-60, 69-70). An RFC made by a single

decision-maker should not be accorded weight in formulating a claimant's RFC.

According to plaintiff, agency policy states that ALJs are to evaluate SDM's RFC

assessments as adjudicatory documents only, and not accord them any evidentiary

weight when deciding cases at the hearing level. Indeed, under the regulations and

agency policy, SDM assessments have no place in an ALJ's disability

determination. *See White v. Comm'r of Soc. Sec.*, No. 12-CV-12833, 2013 WL

4414727, *8 (E.D. Mich. Aug. 14, 2013).  In *Wyatt v. Comm'r of Soc. Sec.*, No.
12-11406, 2013 WL 4483074 (E.D. Mich. Aug. 19, 2013), the district court
concluded that relying on an SDM's opinion was not harmless where there were
no other medical opinions to rely on, noting:

> This Court has stressed the importance of medical
> opinions to support a claimant's RFC, and cautioned
> ALJs against relying on their own expertise in drawing
> RFC conclusions from raw medical data. Moreover, this
> Court has found that an ALJ is not qualified to translate
> raw medical data, such as MRIs, into functional capacity
> determinations. *Mitsoff v. Comm'r of Soc. Sec.*, No.
> 3:12cv046, 2013 WL 1098188, at *8 (S.D. Ohio March
> 15, 2013) (internal citations omitted); *see also Sparck v.
> Comm'r of Soc. Sec.*, No. 11–10521, 2012 WL 4009650,
> at *9 (E.D. Mich. Aug. 23, 212) (while the ALJ reserves
> the right to decide a claimant's RFC, he must rely on
> medical opinions to support his conclusions regarding a
> claimant's mental and cognitive limitations); *Rohrberg v.
> Apfel*, 26 F. Supp. 2d 303, 311 (D. Mass.1998).

(*Id*. at *16).

The ALJ also indicates that she gave "great weight" to the opinion of
internist, Dr. Bina Shaw, who conducted a physical examination of plaintiff on
July 16, 2011 at the request of the Commissioner.  (Tr. 17).  Dr. Shaw opined that
plaintiff could work for an eight hour day, and could sit, stand, walk, bend and lift
at least five-to-ten pounds of weight without difficulty.  (Tr. 305).  Plaintiff
contends that Dr. Shaw's opinions limits plaintiff to no more than sedentary work

because of his limited ability to lift only 5-10 pounds.[2]  A vocational expert

testified that if an individual could lift 5-10 pounds, light occupational work

would be eliminated and only sedentary work would be possible.  (Tr. 48).  For

these reasons, plaintiff contends that the ALJ's RFC for light work activity is not

supported by substantial evidence.

       2.     The ALJ did not properly assess plaintiff's mental limitations

Plaintiff argues that the ALJ failed to properly assess his mental limitations

pursuant to 20 CFR 404.1520a, which requires an analysis of plaintiff's ability to

sustain work, using appropriate production standards, in either real or simulated

work tasks, e.g., task completion within acceptable time periods.  Here, the ALJ

determined that "work must be simple repetitive task at the SVP 1 or 2 level

(unskilled work) because the claimant cannot carry out detailed instructions

because of anxiety and depression." (Tr. 16).  Plaintiff claims that this RFC

finding is inadequate and does not meaningfully evaluate plaintiff's ability to

function indepedently, appropriately, effectively, or on a sustained basis as

required by 20 CFR § 404.1520a(c)(2).   Plaintiff also claims that the RFC

---

[2]  "Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties.  Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met."  20 C.F.R.A § 404.1567

instruction that plaintiff can perform simple repetitive tasks, but without further detailed instructions fails to comply with the language of SSR 96-8p.  That ruling provides:

> A finding limiting a claimant to "unskilled work" is not a mental residual functional capacity assessment because the claimant's mental limitations are not expressed in terms of work-related functions. Work-related mental activities generally required by competitive, remunerative work includes the abilities to: understand, carry out, and remember instructions; use judgment in making work related decisions; respond appropriately to supervision, co-workers and work situations; and deal with changes in a routine work setting.

Without more detailed findings on how plaintiff's mental limitations affected his work-related functions, plaintiff claims that ALJ's RFC finding fails.

   3.   The ALJ's hypothetical to the VE was incomplete and inaccurate

Related to his initial RFC argument, plaintiff also agues that by limiting plaintiff to simple, repetitive unskilled work without more detailed instructions, the ALJ failed to adequately account for plaintiff's limitations in concentration, persistence, or pace.  (Dkt. 11, at Pg. ID 420-422).  Here, the ALJ determined that plaintiff had moderate limitations in concentration, persistence, or pace, yet failed to adequately account for this finding in his hypothetical questions posed to the vocational expert.  Plaintiff cites *Brown v. Comm'r of Soc. Sec.*, No. 07-15418, 2009 WL 596360, *8-9 (E.D. Mich. Mar. 9, 2009) where the court held that a

7

hypothetical question that included a limitation to "simple and routine" jobs did not properly reflect the limitation of someone with moderate deficiencies in concentration, persistence, or pace.  *See also Edwards v. Barnhard*, 383 F. Supp. 2d 920, 921 (E.D. Mich. 2005) (generic limitations such as "unskilled work" fail to account for "moderate" concentrational and pacing deficiencies).  Additionally, in *Elias v. Comm'r of Soc. Sec.*, No. 08-14583, 2009 WL 5166200 (E.D. Mich. Dec. 18, 2009) the court found "it hard to imagine a 'moderate' problem occurring less frequently than 20% of the time", which according to the VE would be work preclusive.  Courts have found "it is difficult to reasonably accept 'moderate'[concentration deficits] meaning anything less than [drifting off-task] 20-30% of the time at work."  *Green v. Comm'r of Soc. Sec.*, No. CIV. 08-CV-11398-DT, 2009 WL 2365557, *10 (E.D. Mich. July 28, 2009)

Specifically here, plaintiff claims that the occupations of hand packager and inspector are the types of jobs which require the employee to be productive and attentive to the task.  Indeed, the vocational expert testified that employers for unskilled work will tolerate an employee to be off-task 10% of the time.  Between 10-20% is a gray area.  And, if an employee is off-task 20% of the time, that would preclude competitive employment.  (Tr. 48-49).  The VE further testified that employers would not tolerate more than two absences per month due to health or other reasons.  (Tr. 49).  In sum, plaintiff argues that the ALJ's questions to the

VE were incomplete because they did not take into account his moderate limitations in concentration, persistence, or pace.

    C.    <u>The Commissioner's Motion for Summary Judgment</u>

        1.    Substantial evidence supports the ALJ's physical RFC assessment

The Commissioner contends that because of the lack of evidence regarding plaintiff's physical impairments, the DDS set him for a physical consultative exam on July 16, 2011 with Dr. Bina Shaw, a board certified internist. (Tr. 303). Apart from a slightly diminished right hand grip (due to an injury to plaintiff's right forearm when he was 16), his physical exam was normal. (Tr. 304). Dr. Shaw opined that plaintiff could "work eight hours a day . . . [and] sit, stand, walk, bend and lift *at least* 5-10 pounds of weight without difficulty." (Tr. 305) (emphasis added). The ALJ afforded "great weight" to Dr. Shaw's opinion. The ALJ explained:

> In regards to the claimant's physical conditions, he has pursued little medical treatment. He attended a consultative internist examination with Dr. Shaw, reporting a history of diabetes, high blood pressure and right arm problems caused by an old injury. On examination, the claimant's blood pressure was elevated. He had scars on his right arm with slight atrophy of the distal forearm at the wrist level. His grip strength was 4/5 on the right and 5/5 on the left. He is right hand dominant. The remainder of his physical examination was normal. Dr. Shaw stated that the claimant was able to work with abilities to sit, stand, walk and bend for 8

> hours and lift at least 5 to 10 pounds. This opinion is
> given great weight because it is well supported by Dr.
> Shaw's examination findings and the other objective
> medical evidence.

(Tr. 17).  The Commissioner contends that Dr. Shaw's findings are not

inconsistent with ALJ's RFC finding.  Moreover, the Commissioner argues that

there are no medical opinions or evidence in the record that assess a greater degree

of physical limitation than found in the RFC.  The Commissioner avers that

plaintiff's argument that the ALJ based her RFC findings upon the report issued

by the single decision maker (SDM) is not supported by the record here.  Indeed,

the ALJ decision does not mention the SDM's opinion, let alone give any

indication that she relied on it in assessing plaintiff's RFC.  Thus, plaintiff's

argument should fail.[3]  *See, e.g., Redlin v. Colvin*, No. 11-15671, 2013 WL

1316956, at *5 (E.D. Mich. Mar. 29, 2013) (finding no merit to the argument that

an ALJ relied on an opinion from a single decision maker where the ALJ's

decision made no mention of that opinion).

---

[3]  The Commissioner argues in the alternative that even had the ALJ
minimally relied on the SDM's opinion, this would not automatically require
reversal.  *See White v. Comm'r of Soc. Sec.*, No. 12-12833, 2013 WL 4414727, at
*10 (E.D. Mich. Aug. 14, 2013) (noting that the case law in this district does not
establish that any reliance on a single decision maker's opinion requires reversal).
Even if the ALJ minimally relied on the SDM's opinion, the error was harmless
because the RFC was supported by substantial evidence –here, Dr. Shaw's
opinion.

Plaintiff also contends that Dr. Shaw's opinion that he can lift "at least 5-10 pounds of weight without difficulty" (Tr. 305) should limit him to a range of sedentary work as opposed to light work. Plaintiff reasons that Dr. Shaw's opinion is more in line with sedentary work, which requires lifting "no more than 10 pounds at a time", as opposed to light work which requires lifting "no more than 20 pounds at a time." However, the Commissioner agues that the RFC is the most the plaintiff can do despite his impairments, not the least. As such, the Commissioner contends that Dr. Shaw did not limit plaintiff to lifting "no more than" 10 pounds, as required for a sedentary RFC. The Commissioner says that because plaintiff has not pointed to any other evidence that is not inconsistent with the RFC for light work, the RFC should be upheld.

### 2. Substantial evidence supports the ALJ's mental RFC assessment

The Commissioner also contends that substantial evidence supports ALJ's assessment of plaintiff's mental limitations. (Dkt. 12, at Pg. ID 441-444). First, with respect to plaintiff's contention that the ALJ did not adhere to the special technique detailed in 20 CFR § 404.1520a, the ALJ assessed the impact of plaintiff's mental impairments in the "A Criteria" as well as the "B Criteria." (Tr. 14). As to the "A Criteria" the ALJ discussed plaintiff's major depressive disorder, panic disorder, and adjustment disorder (Tr. 14). Turning to the "B

Criteria," the ALJ found that plaintiff's mental impairments caused mild restrictions to his activities of daily living, moderate difficulties in maintaining social functioning, moderate difficulties in maintaining CPP, and no episodes of deterioration in work-like settings (Tr. 15). Based on these findings, the ALJ found that no listing was met or equaled (Tr. 15-16), and went on to discuss the RFC analysis.

Plaintiff claims that by limiting him to simple, repetitive unskilled work, without more detailed instructions, the ALJ failed to adequately account for his moderate limitations in CPP. (Tr. 16). The Commissioner, however, claims that while plaintiff has cited some case law that supports his position, other cases in this District recognize that limiting a claimant to simple, routine, work is sufficient, because at least some claimants with those limitations can stay on task and keep pace when the work is simple. *See White v. Comm'r of Soc. Sec.*, No. 12-12833, 2013 WL 4414727 (E.D. Mich. Aug. 14, 2013 (discussing applicable case law). The Commissioner contends that the court must look at the record "as a whole" to determine if substantial evidence supports the RFC. The Commissioner ultimately argues that plaintiff has not met the challenge as he failed to explain why the facts of his case require a more limited RFC finding to account for his moderate limitations in CPP. *See Lewicki v. Comm'r of Soc. Sec.*, No. 09-11844, 2010 WL 3905375, at *3 (E.D. Mich. Sept. 30, 2010) (suggesting that an

12

argument under *Edwards* requires Plaintiff to make such a showing).

## III.   DISCUSSION

### A.   <u>Standard of Review</u>

In enacting the social security system, Congress created a two-tiered system in which the administrative agency handles claims, and the judiciary merely reviews the agency determination for exceeding statutory authority or for being arbitrary and capricious.  *Sullivan v. Zebley*, 493 U.S. 521 (1990).  The administrative process itself is multifaceted in that a state agency makes an initial determination that can be appealed first to the agency itself, then to an ALJ, and finally to the Appeals Council.  *Bowen v. Yuckert*, 482 U.S. 137 (1987).  If relief is not found during this administrative review process, the claimant may file an action in federal district court. *Mullen v. Bowen*, 800 F.2d 535, 537 (6th Cir. 1986).

This Court has original jurisdiction to review the Commissioner's final administrative decision pursuant to 42 U.S.C. § 405(g).  Judicial review under this statute is limited in that the court "must affirm the Commissioner's conclusions absent a determination that the Commissioner has failed to apply the correct legal standard or has made findings of fact unsupported by substantial evidence in the record." *Longworth v. Comm'r of Soc. Sec.*, 402 F.3d 591, 595 (6th Cir. 2005); *Walters*, 127 F.3d at 528.  In deciding whether substantial evidence supports the

13

ALJ's decision, "we do not try the case de novo, resolve conflicts in evidence, or decide questions of credibility." *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007); *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984). "It is of course for the ALJ, and not the reviewing court, to evaluate the credibility of witnesses, including that of the claimant." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 247 (6th Cir. 2007); *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 475 (6th Cir. 2003) (an "ALJ is not required to accept a claimant's subjective complaints and may . . . consider the credibility of a claimant when making a determination of disability."); *Cruse v. Comm'r of Soc. Sec.*, 502 F.3d 532, 542 (6th Cir. 2007) (the "ALJ's credibility determinations about the claimant are to be given great weight, particularly since the ALJ is charged with observing the claimant's demeanor and credibility.") (quotation marks omitted); *Walters*, 127 F.3d at 531 ("Discounting credibility to a certain degree is appropriate where an ALJ finds contradictions among medical reports, claimant's testimony, and other evidence."). "However, the ALJ is not free to make credibility determinations based solely upon an 'intangible or intuitive notion about an individual's credibility.'" *Rogers*, 486 F.3d at 247, quoting Soc. Sec. Rul. 96-7p, 1996 WL 374186, *4.

If supported by substantial evidence, the Commissioner's findings of fact are conclusive. 42 U.S.C. § 405(g). Therefore, this Court may not reverse the Commissioner's decision merely because it disagrees or because "there exists in

the record substantial evidence to support a different conclusion." *McClanahan v.*

*Comm'r of Soc. Sec.*, 474 F.3d 830, 833 (6th Cir. 2006); *Mullen v. Bowen*, 800

F.2d 535, 545 (6th Cir. 1986) (*en banc*).  Substantial evidence is "more than a

scintilla of evidence but less than a preponderance; it is such relevant evidence as

a reasonable mind might accept as adequate to support a conclusion." *Rogers*, 486

F.3d at 241; *Jones*, 336 F.3d at 475.  "The substantial evidence standard

presupposes that there is a 'zone of choice' within which the Commissioner may

proceed without interference from the courts." *Felisky v. Bowen*, 35 F.3d 1027,

1035 (6th Cir. 1994) (citations omitted), citing, *Mullen*, 800 F.2d at 545.

The scope of this Court's review is limited to an examination of the record

only.  *Bass*, 499 F.3d at 512-13; *Foster v. Halter*, 279 F.3d 348, 357 (6th Cir.

2001).  When reviewing the Commissioner's factual findings for substantial

evidence, a reviewing court must consider the evidence in the record as a whole,

including that evidence which might subtract from its weight.  *Wyatt v. Sec'y of

Health & Human Servs.*, 974 F.2d 680, 683 (6th Cir. 1992).  "Both the court of

appeals and the district court may look to any evidence in the record, regardless of

whether it has been cited by the Appeals Council." *Heston v. Comm'r of Soc.

Sec.*, 245 F.3d 528, 535 (6th Cir. 2001).  There is no requirement, however, that

either the ALJ or the reviewing court must discuss every piece of evidence in the

administrative record. *Kornecky v. Comm'r of Soc. Sec.*, 167 Fed. Appx. 496, 508

(6th Cir. 2006) ("[a]n ALJ can consider all the evidence without directly addressing in his written decision every piece of evidence submitted by a party.") (internal citation marks omitted); *see also Van Der Maas v. Comm'r of Soc. Sec.*, 198 Fed. Appx. 521, 526 (6th Cir. 2006).

   B.   <u>Governing Law</u>

   The "[c]laimant bears the burden of proving his entitlement to benefits." *Boyes v. Sec'y of Health & Human Servs.*, 46 F.3d 510, 512 (6th Cir. 1994); *accord*, *Bartyzel v. Comm'r of Soc. Sec.*, 74 Fed. Appx. 515, 524 (6th Cir. 2003). There are several benefits programs under the Act, including the Disability Insurance Benefits Program (DIB) of Title II (42 U.S.C. §§ 401 *et seq.*) and the Supplemental Security Income Program (SSI) of Title XVI (42 U.S.C. §§ 1381 *et seq.*). Title II benefits are available to qualifying wage earners who become disabled prior to the expiration of their insured status; Title XVI benefits are available to poverty stricken adults and children who become disabled. F. Bloch, Federal Disability Law and Practice § 1.1 (1984). While the two programs have different eligibility requirements, "DIB and SSI are available only for those who have a 'disability.'" *Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007). "Disability" means:

> inability to engage in any substantial gainful activity by
> reason of any medically determinable physical or mental
> impairment which can be expected to result in death or

which has lasted or can be expected to last for a
continuous period of not less than 12 months.

42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A) (DIB); *see also* 20 C.F.R. § 416.905(a)

(SSI).

The Commissioner's regulations provide that disability is to be determined

through the application of a five-step sequential analysis:

Step One:  If the claimant is currently engaged in
substantial gainful activity, benefits are denied without
further analysis.

Step Two:  If the claimant does not have a severe
impairment or combination of impairments, that
"significantly limits ... physical or mental ability to do
basic work activities," benefits are denied without
further analysis.

Step Three:  If plaintiff is not performing substantial
gainful activity, has a severe impairment that is expected
to last for at least twelve months, and the severe
impairment meets or equals one of the impairments listed
in the regulations, the claimant is conclusively presumed
to be disabled regardless of age, education or work
experience.

Step Four:  If the claimant is able to perform his or her
past relevant work, benefits are denied without further
analysis.

Step Five: Even if the claimant is unable to perform his
or her past relevant work, if other work exists in the
national economy that plaintiff can perform, in view of
his or her age, education, and work experience, benefits
are denied.

*Carpenter v. Comm'r of Soc. Sec.*, 2008 WL 4793424 (E.D. Mich. 2008), citing, 20 C.F.R. §§ 404.1520, 416.920; *Heston*, 245 F.3d at 534. "If the Commissioner makes a dispositive finding at any point in the five-step process, the review terminates." *Colvin*, 475 F.3d at 730.

"Through step four, the claimant bears the burden of proving the existence and severity of limitations caused by her impairments and the fact that she is precluded from performing her past relevant work." *Jones*, 336 F.3d at 474, cited with approval in *Cruse*, 502 F.3d at 540. If the analysis reaches the fifth step without a finding that the claimant is not disabled, the burden transfers to the Commissioner. *Combs v. Comm'r of Soc. Sec.*, 459 F.3d 640, 643 (6th Cir. 2006). At the fifth step, the Commissioner is required to show that "other jobs in significant numbers exist in the national economy that [claimant] could perform given [his] RFC and considering relevant vocational factors." *Rogers*, 486 F.3d at 241; 20 C.F.R. §§ 416.920(a)(4)(v) and (g).

If the Commissioner's decision is supported by substantial evidence, the decision must be affirmed even if the court would have decided the matter differently and even where substantial evidence supports the opposite conclusion. *McClanahan*, 474 F.3d at 833; *Mullen*, 800 F.2d at 545. In other words, where substantial evidence supports the ALJ's decision, it must be upheld.

C.    Analysis

1.    Single Decisionmaker

In this case, plaintiff argues that the ALJ improperly relied on the report issued by the single decisionmaker in this case, Ms. Tammy Cooper.  On July 28, 2011, Ms. Cooper, a single decisionmaker with the DDS reviewed plaintiff's medical records and opined that plaintiff retained the residual functional capacity (RFC) to perform light work requiring no more than frequent handling with the right upper extremity.  (Tr. 69-70).

In her opinion, the ALJ discusses whether plaintiff's physical and mental impairments, alone or in combination, medically equal a listing. (Tr. 15-16).  The undersigned agrees with the Commissioner that the ALJ does not expressly rely on the opinions of the SDM, Ms. Cooper, which would have been wholly improper. As recognized in *Stratton v. Astrue*, 2012 WL 1852084 (D.N.H.2012), SSR 96-6p describes the process by which ALJs are to make step-three determinations:

> The administrative law judge ... is responsible for
> deciding the ultimate legal question whether a listing is
> met or equaled. As trier of the facts, an administrative
> law judge ... is not bound by a finding of a State agency
> medical or psychological consultant or other program
> physician or psychologist as to whether an individual's
> impairment(s) is equivalent in severity to any impairment
> in the Listing of Impairments.  However, longstanding
> policy requires that the judgment of a physician (or
> psychologist) designated by the Commissioner on the
> issue of equivalence on the evidence before the

19

> administrative law judge ... must be received into the
> record as expert opinion evidence and given appropriate
> weight.

*Stratton*, 2012 WL 1852084, at *11-12 (quoting SSR 96â€"6p) (emphasis added);

*see also Barnett v. Barnhart*, 381 F.3d 664, 670 (7th Cir.2004) (Whether a

claimant's impairment equals a listing is a medical judgment, and an ALJ must

consider an expert's opinion on the issue) (citing 20 C.F.R. § 1526(b)); *Retka v.*

*Comm'r of Soc. Sec.*, 1995 WL 697215, at *2 (6th Cir. Nov.22, 1995) (generally,

the opinion of a medical expert is required before a determination of medical

equivalence is made) (citing 20 C.F.R. § 416.926(b)); *Modjewski v. Astrue*, 2011

WL 4841091, at *1 (E.D. Wis. Oct.12, 2011) (warning that an ALJ who makes a

step-three equivalence determination without expert-opinion evidence runs the

risk of impermissibly playing doctor).

Here, the undersigned points out that there are Disability Determination

Explanations as well as Residual Functional Capacity Determinations in the

record.  (Tr. 62, 72; 53-61, 63-71).  In the Disability Determination Explanations,

a medical doctor, Dr. Ruqiya Tareen, M.D., reviewed and signed the finding that

plaintiff was not disabled.  (Tr. 62, 72).  Dr. Tareen also signed the RFC

determinations.  (Tr. 53-61, 63-71).  Moreover, as the Commissioner also pointed

out, because of the lack of evidence regarding plaintiff's physical impairments, at

20

the hearing level, the ALJ requested a consulting physical examination for plaintiff, which he attended on July 16, 2011 with internist Dr. Bina Shaw. (Tr. 303). Apart from a slightly diminished right hand grip, Dr. Shaw determined plaintiff's physical exam to be normal. (Tr. 304). Dr. Shaw further opined that plaintiff could "work eight hours a day, . . . [and] sit, stand, walk, bend and lift at least 5-10 pounds of weight without difficulty." (Tr. 305). The undersigned finds that plaintiff has not shown that the ALJ relied on the opinion of the single decisionmaker, Ms. Cooper, in this case. Rather, Dr. Tareen reviewed and signed the original DDE and RFC forms, and because the ALJ felt that there was a lack of physical evidence, he also ordered a consulting evaluation for plaintiff who also opined that plaintiff could perform a range of "light" work at the hearing level. (Tr. 305).

     2.     Physical RFC

Plaintiff also complains that Dr. Shaw's opinion is more consistent with sedentary work than light work. Specifically, Dr. Shaw opined that plaintiff could "lift at least 5-10 pounds of weight without difficulty[.]" Plaintiff claims that this is more consistent with sedentary work than light work. (Tr. 305). Sedentary work requires lifting "no more than 10 pounds at a time" as opposed to light work, which requires lifting "no more than 20 pounds at a time." *Compare* 404.1567(a) and 404.1567(b). The Commissioner on the other hand argues that Dr. Shaw's

opinion should be read to mean that plaintiff could lift *at least* 10 pounds, which is not inconsistent with the RFC, which indicated that plaintiff could perform light work.  The undersigned agrees with plaintiff.  Indeed, the Commissioner's suggested reading of Dr. Shaw's opinion would nullify the words "without difficulty."  In the view of the undersigned, when Dr. Shaw concluded that plaintiff could "lift at least 5-10 pounds of weight *without difficulty*[,]" he also was saying that lifting more than 10 pounds of weight would cause difficulty.  For that reason, the undersigned rejects the Commissioner's argument on this point.

### 3.    Mental RFC & Hypothetical Question

Plaintiff also argues that the ALJ erred by failing to account for his moderate difficulties in maintaining concentration, persistence or pace (CPP) in both the RFC and the hypothetical questions to the vocational expert.

In this case, the ALJ determined that plaintiff had the following severe impairments: major depressive disorder, panic disorder, adjustment disorder, polysubstance abuse in recent remission, high blood pressure, diabetes mellitus, obesity, and residuals status post right arm injury. (Tr. 14). Significantly, the ALJ also considered whether the "B" criteria were satisfied. (Tr. 15-16). While the ALJ concluded that the "severity of the claimant's mental impairments, considered singly and in combination, did not meet or equal the criteria of listings 12.04, 12.06, and 12.09[,]" he did find that "[w]ith regard to concentration, persistence or

22

pace, the claimant has moderate difficulties." (Tr. 15). Plaintiff argues that the

RFC does not adequately account for the ALJ's finding that he had "moderate"

difficulties in concentration, persistence or pace. Plaintiff relatedly argues that the

ALJ's hypothetical to the VE was flawed because it did not accurately describe

plaintiff's "moderate" limitations in concentration, persistence or pace.

Here, the ALJ determined that plaintiff had the residual functional capacity

("RFC") to perform:

> light work as defined in 20 CFR 404.1567(b) and
> 416.967(b) except the claimant cannot work with the
> general public; cannot work in a crowded area, cannot
> work in close proximity to co-workers; and cannot
> perform fine manipulation with his right, dominant hand.
> That work must be simple repetitive task at the SVP 1 or
> 2 level (unskilled work) because the claimant cannot
> carry out detailed instructions because of anxiety and
> depression.

(Tr. 16). This court has determined that "there is no bright-line rule requiring

remand whenever an ALJ's hypothetical includes a limitation of 'unskilled,

routine work' but excludes a moderate limitation in concentration. Rather, this

Court must look at the record as a whole and determine if substantial evidence

supports the ALJ's RFC." *Smith v. Comm'r of Soc. Sec.*, No. 13-10862, 2013 WL

6094745, at *8 (E.D. Mich. Nov. 20, 2013), citing *Hess v. Comm'r of Soc. Sec.*,

No. 07-13138, 2008 WL 2478325, at *7 (E.D. Mich. June 16, 2008); *see also*

*Lewicki v. Comm'r of Soc. Sec.*, No. 09-11844, 2010 WL 3905375, at *3 (E.D.

Mich. Sept. 30, 2010). In other words,

> Taken in isolation, the hypothetical limitations
> consisting of '[s]imple routine tasks in a low stress
> environment' and 'minimal changes in the work place
> setting' might appear inadequate to account for
> 'moderate' concentrational and pacing deficiencies.
> However, the record as a whole indicates that the
> hypothetical question and the ALJ's finding of
> "moderate" limitations findings are not incompatible.

*Hess*, 2008 WL 2478325, at *7; *see also Lewicki*, 2010 WL 3905375, at *3. In

*Hess*, for example, even though the ALJ omitted a concentration-based limitation

from the hypothetical, this court did not remand because the entire record

supported a finding that plaintiff could perform unskilled work on a sustained

basis. *Hess*, 2008 WL 2478325, at *8.

The essential question here is whether the ALJ's conclusion that plaintiff

was limited to simple, unskilled work sufficiently accommodated the ALJ's

finding that plaintiff had moderate difficulties in concentration, persistence, or

pace. This issue has been addressed numerous times in this District, as noted in

*Hicks v. Comm'r*, 2011 WL 6000714 (E.D. Mich. 2011), *adopted by* 2011 WL

6000701 (E.D. Mich. 2011) (Roberts, J.). The undersigned agrees with the holding

in *Hicks* that an RFC and hypothetical simply limiting a claimant to "simple

routine tasks" may, in some instances, fail to capture a claimant's moderate

limitation in concentration, persistence, or pace because the difficulty of a task is

24

not equivalent to the difficulty of staying on task. *Id.*, *citing Green v. Comm'r of Soc. Sec.*, 2009 WL 2365557, at *10 (E.D. Mich. 2009) ("It is difficult to reasonably accept 'moderate' meaning anything less than 20%–30% of the time at work. Thus, 'moderate' concentration problems . . . need to be included or accommodated in some suitable fashion in the hypothetical question at Step 5. . . . Simply including the hypothetical of unskilled jobs with limited contact with co-workers and the public is not sufficient."); *Edwards v. Barnhart*, 383 F. Supp. 2d 920, 930 (E.D. Mich. 2005) ("Plaintiff may be unable to meet quotas, stay alert, or work at a consistent pace, even at a simple, unskilled, routine job."). Yet, other cases seemingly conclude otherwise. *See e.g., Bohn-Morton v. Comm'r of Soc. Sec.*, 389 F. Supp. 2d 804, 807 (E.D. Mich. 2005) (finding that "unskilled" work limitation in RFC was sufficient to account for ALJ's PRTF finding that claimant "often" experiences CPP issues); *Lewicki v. Comm'r of Soc. Sec.*, 2010 WL 3905375, at *3 (E.D. Mich. 2010) ("There may be cases where such moderate limitations preclude the performance of even some simple, unskilled tasks. Plaintiff does not, however, explain why the facts of this particular case require a more detailed hypothetical question to adequately account for his own moderate limitations in concentration, persistence, or pace.").

*Hicks* highlights an important reason the outcomes of these seemingly similar cases are often so different. The cases within this District that do not

remand for the ALJ to include a moderate concentration, persistence, or pace limitation are distinguishable because a medical professional had made a specific finding that the claimant had moderate difficulties in concentration, persistence, or pace, but could still work on a sustained basis. *Hicks*, 2011 WL 6000701, *4. Judge Michelson distinguished the cases where a medical professional found moderate difficulties in concentration, persistence, or pace, from cases like *Benton v. Comm'r of Soc. Sec.*, 511 F. Supp. 2d 842 (E.D. Mich. 2007) and the facts of *Hicks*, where the ALJ (rather than a medical professional) made the finding of moderate limitations in concentration, persistence, or pace.

This case is akin to *Benton* and *Hicks*, where the ALJ made a finding of moderate limitations in concentration, persistence, or pace, but did not have a medical opinion finding a moderate limitation in concentration, persistence, or pace and which indicated that the plaintiff was still capable of sustained work. Thus, the RFC and hypothetical question in this case, just like that in *Benton* and *Hicks* were flawed and did not properly account for plaintiff's moderate limitation in concentration, persistence, or pace. For this reason, this matter should be remanded so that the ALJ can "adequately account for his determination that Plaintiff had 'moderate' difficulties in 'concentration, persistence, or pace' in his RFC and [elicit] additional VE testimony if necessary." *Hicks*, 2011 WL 6000701, *4.

## IV.   RECOMMENDATION

For the reasons set forth above, the undersigned **RECOMMENDS** that plaintiff's motion for summary judgment be **GRANTED**, that defendant's motion for summary judgment be **DENIED**, and that the findings of the Commissioner be **REVERSED AND REMANDED** for proceedings in accordance with this Report and Recommendation.

The parties to this action may object to and seek review of this Report and Recommendation, but are required to file any objections within 14 days of service, as provided for in Federal Rule of Civil Procedure 72(b)(2) and Local Rule 72.1(d). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health and Human Servs.*, 932 F.2d 505 (6th Cir. 1981). Filing objections that raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation. *Willis v. Sec'y of Health and Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to Local Rule 72.1(d)(2), any objections must be served on this Magistrate Judge.

Any objections must be labeled as "Objection No. 1," "Objection No. 2," etc. Any objection must recite precisely the provision of this Report and Recommendation to which it pertains. Not later than 14 days after service of an

27

objection, the opposing party may file a concise response proportionate to the

objections in length and complexity.  Fed.R.Civ.P. 72(b)(2), Local Rule 72.1(d).

The response must specifically address each issue raised in the objections, in the

same order, and labeled as "Response to Objection No. 1," "Response to Objection

No. 2," etc.  If the Court determines that any objections are without merit, it may

rule without awaiting the response.

Date: August 21, 2015                          s/Michael Hluchaniuk
                                               Michael Hluchaniuk
                                               United States Magistrate Judge

## CERTIFICATE OF SERVICE

   I certify that on August 21, 2015, I electronically filed the foregoing paper
with the Clerk of the Court using the ECF system, which will send electronic
notification to all counsel of record.

                                               s/Tammy Hallwood
                                               Case Manager
                                               (810) 341-7887
                                               tammy_hallwood@mied.uscourts.gov